```
                                              USDC SDNY
UNITED STATES DISTRICT COURT                  DOCUMENT
SOUTHERN DISTRICT OF NEW YORK                 ELECTRONICALLY FILED
-----------------------------------X          DOC #: _____
JOHN FETTER, FETTER & HENDERSON    :          DATE FILED: Oct. 1, 2012
(PTY) LTD., and APPLIED TECHNOLOGY :
LIMITED.,                          :
                                   :
               Plaintiffs,         :
                                   :          No. 11 Civ. 6239 (JFK)
    -against-                      :              OPINION & ORDER
                                   :
ROSALIE K. SCHINK,                 :
                                   :
               Defendant.          :
-----------------------------------X
```

APPEARANCES

    For Plaintiffs John Fetter, Fetter & Henderson (Pty) Ltd,
    and Applied Technology Limited:
        JOHNSON & ASSOCIATES
        By: Bruce D. Johnson

    For Defendant Rosalie K. Schink:
        LATHROP & GAGE LLP
        By: William Hansen
            Thomas Curtin

**JOHN F. KEENAN, United States District Judge:**

    Currently before the Court are (1) Defendant Rosalie Schink's ("Schink" or "Defendant") motion for summary judgment and (2) cross motions to strike. For the reasons that follow, the motion for summary judgment is granted and the cross motions to strike are denied as moot.

## I.    Background

    This is a breach of contract action, which was removed by Defendant from state court to this Court. Plaintiffs John Fetter, Fetter and Henderson Ltd., and Applied Technology

Limited (collectively, "Plaintiffs") hold patents for single point watering caps for controlled addition of water to lead acid batteries. (Compl. ¶ 8). Defendant Schink is the widow of Robert Morris ("Morris"), founder of Watermaster of America, Inc. ("Watermaster"), a company that sold battery watering systems from its incorporation in 1984 until it filed for bankruptcy in 2007. (Def.'s Rule 56.1 Statement ¶ 5).

From 1986 through 2006, Plaintiffs delivered bulk packages of its watering caps to Watermaster, which Watermaster resold. (Compl. ¶ 8). Plaintiff Applied Technology Limited ("ATL") issued invoices. No written agreement was ever executed by the parties. (Def's Rule 56.1 Statement ¶¶ 24-25). According to Plaintiffs, the parties had an implied contract under which Watermaster would resell Plaintiffs' patented watering caps within a certain geographical territory, which comprised the United States, Canada, and Mexico. (Compl. ¶ 8).

Morris operated Watermaster out of his residence, which he shared with Schink. Schink worked for Watermaster in various capacities, without pay, during the 1980s, and started receiving compensation for her work during the 1990s. Schink married Morris in 2004 and became an officer of Watermaster one month before Morris's death, in 2005. (Id. at ¶¶ 21-23).

Following Morris's death, Schink operated Watermaster out of their home for two years, but by June 2007 poor sales forced

her to wind down the business. (Def's 56.1 Statement at ¶ 32). On June 22, 2007, ATL filed an action in New York State court against Watermaster for $611,130 in unpaid invoices. That action was removed to the Southern District and came before Judge Swain. Applied Tech. Ltd. V. Watermaster of America, 07 Civ. 6620. Watermaster filed for Chapter 7 bankruptcy on July 16, 2009, causing Judge Swain to stay the 2007 action. Ultimately, on January 19, 2012, Judge Swain dismissed the case upon the conclusion of the bankruptcy proceeding. Id.

   Plaintiffs now bring the instant action against Schink, alleging that she is personally liable for Watermaster's $611,130 in unpaid invoices by virtue of the fact that she "entered into a joint venture" with the company. They raise six claims for relief: (1) breach of contract for unpaid invoices, (2) breach of contract for exceeding the geographical scope of the joint agreement by reselling bulk packages in Australia and Germany, (3) breach of contract for refusing to relinquish the geographic territory of North America, (4) breach of the implied covenant of good faith and fair dealing, (5) unjust enrichment, and (6) common law fraud. At oral argument, Plaintiffs withdrew their claim for unjust enrichment. (Tr. of Sept 6, 2012 at 13-14). The Court will only address the five remaining claims.

   Because the relevant discovery was conducted in connection with the bankruptcy proceeding and the case before Judge Swain,

3

the instant summary judgment motion was filed and briefed without any significant discovery.  Indeed, at oral argument, Plaintiffs represented that the discovery in the previous cases yielded sufficient evidence for the Court to decide these motions. (Tr. of Sept 6, 2012 at 12-13).

## II.  Discussion

### A.  Summary Judgment Standard

Summary judgment is warranted when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008)).  Thus, when determining whether such factual issues exist, the Court must "construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the movant." Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof. Celotex, 477 U.S. at 322-23.  "The mere existence of a

scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Hayut v. State Univ. of N.Y.</u>, 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original).

### B. Claims One Through Four: Breach of Contract

To obtain relief for counts one through four, which all sound in breach of contract, Plaintiffs must establish (1) that Schink entered a joint venture with Watermaster and (2) that Plaintiffs entered into a valid contract with Watermaster in 1986. Absent these findings, Schink cannot be held personally liable for breach of contract.

### 1. Joint Venture

Plaintiffs concede that there is no written joint venture agreement between Watermaster and Schink, but point to evidence of Morris's and Schink's conduct to support their theory of an implied joint venture agreement. First, they note that Morris made arrangements for the continuation of Watermaster after his death, including appointing Schink the "corporate secretary" of Watermaster and naming her the principal beneficiary of his estate. As a result, Schink's compensation drastically increased: on March 29, 2005, Morris approved a payroll check in the amount of $21,992.72, despite having paid her only $7,221.20 for her services in the prior quarter. (Pl. Rule 56.1

5

Opp. ¶ 23). Second, Plaintiffs argue that they have identified a series of "capital contributions," that are consistent with Schink and Watermaster's joint venture: she used her residence as the base of operations of the company, donated her car and her parking space to aid in the promotion and distribution of Watermaster's products, used her father's residence for free storage of Watermaster files, and contributed her computer skills and knowledge of the business. (Id. at ¶¶ 34-38).

Plaintiffs argue that these "contributions," when coupled with the fact that Schink shared in the profits and losses of Watermaster while not observing corporate formalities, establishes that she entered into a joint venture with Watermaster in 2005. (Id.). To further support their assertion that Schink shared profits, Plaintiffs note that Schink has stated that she determined her compensation based upon "what was left over that would not impact the business." (Schink Aff. At 4, 15). Plaintiffs state that in the two years after Morris's death, "the ratio between [Schink's] salary and Watermaster's gross sales receipt mushroomed."

In order to establish a joint venture under New York law, "(1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge, or

6

effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses." ITEL Containers Int'l Corp. v. Atlanttrafik Exp. Serv., Ltd., 909 F.2d 698, 701 (2d Cir. 1990). "The absence of any one of these elements is fatal to the establishment of a contract." Zeising v. Kelly, 152 F. Supp. 2d 335, 347-48 (S.D.N.Y. 2001).

As to the first two requirements, while there need not be an explicit agreement between parties, they must be clear that they intend to form a joint venture. Precision Testing Labs. v. Kenyon Corp., 644 F. Supp. 1327, 1349 (S.D.N.Y. 1986). Here, there is simply no evidence to suggest that the parties joined their property, interests, skills, and risks with the intention of becoming joint venturers. Rather than demonstrating an intent to form a joint venture, the evidence supports the conclusion that Schink stepped into the role that her husband occupied at Watermaster prior to his death. Naturally, her salary increased concurrent with her responsibilities.

Plaintiffs' joint venture theory is further weakened by the overwhelming evidence that Watermaster was operated as a corporation, with Morris at the helm until his death, at which point Schink took control. Schink has testified that she "took up [Morris's] mantle" after Morris passed away and was compensated in the same way Morris was. (Schink Aff. at 14).

7

Moreover, other than issuing salary checks to Schink, Watermaster did not cover any other personal expenses. (Id.). Without evidence that Schink sought to abandon the corporate form, the only reasonable conclusion is that Watermaster continued to operate as a corporation, rendering it impossible for a joint venture to arise. "A joint venture and a corporation are mutually exclusive ways of doing business." Itel Containers, 909 F.2d at 702 (citing Arditi v. Dubitzky, 354 F.2d 483, 486 (2d Cir. 1965)).

 Similarly, Plaintiffs adduce no evidence to conclude that Schink made "capital contributions" to Watermaster sufficient to satisfy the third requirement of a joint venture. Plaintiffs' purported capital contributions were part and parcel of Watermaster since the company's inception in 1984. Morris's residence – which Schink shared with him until his death - was always the base of operations for Watermaster. (Def. Rule 56.1 Statement ¶ 21). Morris's Pontiac, which Schink inherited, was always used to distribute Watermaster's products. The parking space also passed to Schink in Morris's will and was always occupied by the Pontiac. (Id. at 22). She even used her computer skills when she volunteered for the company in the 1980s. (Id. at 20, Schink Aff. at 8). Rather than establish the existence of a joint venture, this evidence merely confirms that Schink continued the business as Morris had run it before his

8

death. See Greenburg v. Ladicorbic, 606 N.Y.S.2d 227, 228 (1st Dept. 1994) ("Inasmuch as the various items of relief are all premised on the existence of a partnership between herself and the individual defendant, summary judgment should have been granted in the absence of any evidence tending to show that plaintiff contributed to the capital of the alleged partnership, or was to share in its losses.") Kyle v. Brenton, 584 N.Y.S. 2d 698, 699 (4th Dept. 1992) ("Further, the undisputed evidence that defendants never made a capital contribution to the business strongly suggests that no partnership existed.") (citations omitted).  Furthermore, Schink's use of her father's basement for the storage of Watermaster's records is insufficient to satisfy this element. See Rivkin v. Reese, 95 Civ. 6332, 1997 WL 639239 at *4 (S.D.N.Y. Oct. 16, 1997) (holding that vague allegations of "small cash outlays" are insufficient to constitute a capital contribution for the purpose of a joint venture).

   Finally, Plaintiffs have presented no evidence to give rise to the conclusion that Schink and Watermaster intended to share profits and losses.  To prove this element, Plaintiffs merely point to evidence that Schink's compensation increased after Morris's death, and the percentage of gross sales she paid herself increased annually from 2005 to 2008.  This cannot possibly be construed as "providing for the sharing of profits

9

and losses among the parties." Zeising v. Kelly, 152 F. Supp. 2d 335, 348 (S.D.N.Y. 2001). Indeed, "the fact that an individual may receive a share of the profits is not dispositive, since all of the elements of the relationship must be considered," including whether the alleged agreement contained a provision for sharing losses as well. Therefore, the fifth requirement is not met. Maalin Bakodesh Soc'y, Inc. v. Lasher, 301 A.D.2d 634, 634 (N.Y. App. Div. 2001) ("[I]t is well-settled that an assertion that there was an agreement to distribute the proceeds of an enterprise on a percentage basis does not suffice to establish the existence of a joint venture.").

Additionally, Plaintiffs have presented no evidence to demonstrate that Schink even impliedly assented to share the losses of Watermaster, which is an indispensable element of a joint venture. See Zeising, 152 F. Supp 2d at 348-49 ("If there was no agreement as to the manner in which the parties were to share in the profits and the losses, the agreement did not create a joint venture."); Kosower v. Gutowitz, 00 Civ. 9011, 2001 WL 1488440, *6, (S.D.N.Y. Nov. 21, 2001) ("It is axiomatic that the essential elements of a partnership must include an agreement between the principals to share losses as well as profits." (internal quotations and citations omitted)).

Plaintiffs have adduced no evidence to conclude that Schink entered into a joint venture with Watermaster. Therefore, even

if there were a valid contract between Watermaster and Plaintiffs, as Plaintiffs suggest, Schink cannot be held liable for its breach.  Accordingly, Plaintiffs cannot sustain any claims stemming from their assertion that Watermaster breached its contract.

### C.   Claim Six: Common Law Fraud

Plaintiffs' claim for common law fraud also rests on the theory that Schink and Watermaster had embarked on a joint venture. (Compl. ¶ 64).  As discussed above, such a theory is untenable based upon the evidence.  Therefore, Plaintiffs' sixth claim also failed.

Even if finding a joint venture between Schink and Watermaster were not a condition precedent to Plaintiffs' common law fraud claim, it would still fail.  Under New York law, "a cause of action sounding in fraud is not viable when the only fraud charged relates to a breach of contract."  Defendant notes that the only difference between Plaintiffs' breach of contract claim and fraud claim is that the fraud claim includes the assertion that Schink never intended to be bound by her contractual obligations with Plaintiffs. (Compl. ¶ 64).

Plaintiffs argue that the fraud claim is different from its contract claims because:  (1) it includes a demand for an additional $270,000 based upon the fact that Schink never intended to pay Plaintiffs' invoices and (2) it notes that

11

Schink did not have any intention of paying the invoices and assured Plaintiffs that Watermaster was continuing its normal operations up until one month before she filed for bankruptcy. (Pl. Br. Opp. at 15).

Plaintiffs have not distinguished its common law fraud claims from its breach of contract claims.  The mere fact that the sixth claim asks for an additional $270,000 in damages and includes the allegation that Schink never intended to pay Plaintiffs does not distinguish this claim from the breach of contract claims.  Where a fraud claim arises out of the same facts as a breach of contract claim, with the addition "only of an allegation that defendant never intended to perform the precise promises spelled out in the contract between the parties, the fraud claim is redundant and plaintiff's sole remedy is for breach of contract." Telecom Int'l Am. Ltd. v. AT&T Corp., 280 F.3d 175, 196 (2d Cir. 2001).  Therefore, Plaintiffs cannot assert a claim for common law fraud.

### III. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment is granted as to all counts and the parties' cross-motions to strike are denied as moot. The Clerk of Court is directed to close the case.

**SO ORDERED.**

Dated:   New York, New York
         October 1, 2012

                                         _____
                                              JOHN F. KEENAN
                                         United States District Judge